# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| AMASON & ASSOCIATES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 7:20-cv-00237-LSC |
| | ) |
| CORE TUSCALOOSA 519-611 RED DREW, LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OF OPINION

Plaintiff Amason & Associates, Inc. ("Amason"), an Alabama corporation, filed this action to perfect a materialman's lien against Defendants Core Tuscaloosa 519-611 Red Drew, LLC ("Core"), BMO Harris, N.A. ("BMO"), and Capital One National Associations ("Capital One") in the Circuit Court of Tuscaloosa County, Alabama. Defendants removed the action to this Court on February 24, 2020, asserting federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Doc. 1.) Before the Court are Plaintiff's Motion to Remand (doc. 8) and Supplement to Pending Motion to Remand (doc. 15). Plaintiff's motions have been fully briefed and are ripe for review. For the reasons stated below, Plaintiff's initial motion to remand

(doc. 8) is due to be terminated as moot, and its supplementary motion to remand (doc. 15) is due to be granted.

## I. BACKGROUND

This action arises from the ill-fated construction of "Hub on Campus – Tuscaloosa" ("The Hub"), a student housing apartment complex located at 519/610 Red Drew Avenue, Tuscaloosa, Alabama. On December 16, 2016, Defendant Core hired Amason, an Alabama corporation with its principal place of business in Tuscaloosa, Alabama, as the general contractor for The Hub. Amason alleges that, per their contract, Core agreed to (1) compensate Amason for completion of any "Owner Change Orders" made at Core's direction, and (2) purchase and maintain builder's risk coverage on an "all risk" coverage form to protect the interest of Amason and Core against property and casualty losses during the construction of The Hub.

On July 6, 2018, a "one thousand year rain event" struck Tuscaloosa, significantly damaging The Hub and causing Amason to incur additional expenses to rush completion of the project on time. (Doc. 1 – Ex. A at ¶ 12.) Although Amason submitted invoices to the builder's risk insurer for these additional expenses, the insurer denied, in part, the claims submitted. Amason alleges that, per the parties' construction contract, Defendant Core is responsible for compensating Amason for

these additional expenses. However, despite repeated claims from Amason, Core has failed to pay the unpaid builder's risk insurance claims or to compensate Amason fully for its completion of the Owner Change Orders.

Amason initially filed this action in the Circuit Court of Tuscaloosa County, Alabama, on February 10, 2020. (Doc. 1 – Ex. A.) In its complaint, Amason alleged that Defendant Core had breached the pair's construction contract, and it sought compensation both for the unpaid builder's risk insurance claims and the charges incurred for completion of the Owner Change Orders. In total, Amason sought monetary damages of $2,312,498.00. Furthermore, Amason sought to perfect and enforce a materialman's lien under Alabama law against Defendant Core, as well as Defendants BMO and Capital One, both of which hold mortgages on the Hub property.

On February 24, 2020, Defendant Core removed the action to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Doc. 1.)[1] In its notice of removal, Defendant Core noted that Amason is an Alabama corporation with its principal place of business in Alabama. It also represented that it is a Delaware limited liability company, and none of its members are citizens of

---

[1] At the time of removal, Amason had not served its complaint on either Defendant BMO or Defendant Capital One. This Court permitted the voluntary dismissal of Defendant BMO on April 8, 2020. (Doc. 16.) At this time, Amason still has not perfected service on Defendant Capital One.

Alabama.[2] Therefore, it argued that complete diversity exists between Amason and all opposing parties. On March 5, 2020, Defendant Core filed its answer and several counterclaims, asserting, among other things, that Amason is contractually obligated to defend and indemnify Core against pending actions brought in state court by Hub tenants for delays in the project's completion. (Doc. 3.)

On March 24, 2020, Amason filed a motion to remand the action back to state court. (Doc. 8.) As grounds for remand, Amason argued that Defendant Core had not adequately shown complete diversity of citizenship between Core's members and Amazon. Alternatively, Amason argued that venue for its materialman's lien action in federal court was inappropriate under Alabama law and that the Court should exercise its discretion to remand the action in the interests of judicial economy.

On March 26, 2020, in response to Defendant Core's counterclaims, Amason filed an Answer and Third-Party Complaint against numerous subcontractors that had contributed to The Hub's construction. (Doc. 10.) Among other third-party claims, Amason asserts that the newly added third-party defendants are

---

[2] The parties do not dispute that there is complete diversity between Amason and Defendants BMO and Capital One. Defendant BMO is a citizen of Illinois under the citizenship rule for national banking associations. 28 U.S.C. § 1348. Similarly, Defendant Capital One is a citizen of Virginia under the same rule. *Id.*

contractually obligated to indemnify and defend Amason against Defendant Core's various counterclaims. It is undisputed that several of the newly added third-party defendants are Alabama citizens and thus share a common citizenship with Amason.

On April 7, 2020, Amason further filed a Supplement to Pending Motion to Remand. (Doc. 15.) In its supplementary motion, Amason expressly incorporated its pending motion to remand. (*Id.* at 2 n.1.)[3] More importantly, Amason's supplementary motion to remand further argues that its third-party complaint against numerous Alabama citizens defeats complete diversity and warrants remand for lack of subject matter jurisdiction.

## II. STANDARD

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). For removal to be proper, the Court must have subject matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly

---

[3] Because Amason's supplementary motion to remand expressly incorporates its prior motion, the initial motion to remand (doc. 8) is due to be terminated as moot.

construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Upon removal, a defendant bears the burden of establishing subject matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

### III. DISCUSSION

In order to exercise jurisdiction over an action pursuant to § 1332(a), this Court must assure itself that the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See, e.g.*, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Because it removed this action, Defendant Core has the burden of establishing the propriety of diversity subject matter jurisdiction. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

The parties do not dispute that the amount in controversy is met, so the only question remaining is whether complete diversity of citizenship exists between the parties. Amason contends, among other grounds for remand, that its impleader of several non-diverse third-party defendants defeats complete diversity and thus necessitates remand. Core, in turn, argues that the Court should exercise its discretion and strike these third-party defendants as improperly joined in the case.

Where a plaintiff asserts claims against an impleaded third-party defendant which shares the plaintiff's citizenship, the Court lacks diversity jurisdiction. *See Fawvor v. Texaco, Inc.*, 546 F.2d 636, 642–43 (5th Cir. 1977) (holding that plaintiff's negligence claim against an impleaded non-diverse third-party defendant required an independent basis for federal jurisdiction where the basis of jurisdiction in the original compliant was diversity).[4] Amason, an Alabama citizen, has impleaded numerous subcontractors, of whom many are also Alabama citizens. As a result, Amason's impleader would defeat complete diversity in this action.

As an initial matter, the Court finds no fault with Amason's impleader as a procedural matter. Under the Federal Rules of Civil Procedure, any "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). A third-party defendant need not obtain the Court's leave if it files its third-party complaint fewer than fourteen days after serving its original answer. *See id.* Here, Amason asserted a third-party complaint asserting indemnity claims against its subcontractors on the same date it filed its original answer to Core's counterclaim.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(*See* doc. 10.) Therefore, unless otherwise prohibited by statute, Amason's third-party complaint against its subcontractors was proper.

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In determining whether to allow the amendment or joinder, the Court should examine the following factors: (1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction," (2) "whether plaintiff has been dilatory in asking for amendment," (3) "whether plaintiff will be significantly injured if amendment is not allowed," and (4) "any other factors bearing on the equities." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851 (1989); *see also Reyes v. BJ's Rests., Inc.*, 774 F. App'x 514, 516–17 (11th Cir. 2019) (per curiam) (applying the *Hensgens* factors to determine whether to permit plaintiff's amendment joining non-diverse defendants after removal).

Notably, however, neither the parties' briefing nor the Court's own research has provided a definitive answer to whether the *Hensgens* factors apply in a case of a plaintiff's impleader that would defeat federal jurisdiction. Indeed, the Court's research has revealed only a single non-binding case examining whether to permit a plaintiff's impleader of non-diverse third-party defendants. *See Caruso v. PNC Bank,*

*N.A.*, No. 2:17-cv-01170-DN, 2019 WL 1429622, at **4–5 (D. Utah Mar. 29, 2019) ("With the addition of Jensen as a nondiverse third party defendant, the *Hensgens* factors weigh in favor of Plaintiffs['] requested remand to state court."). *Hensgens* itself states that that the analysis is to be applied when a new nondiverse defendant is to be added. *Hensgens*, 833 F.2d at 1182 ("The district court, *when faced with an amended pleading naming a new nondiverse defendant in a removed case*, should scrutinize that amendment more closely than an ordinary amendment." (emphasis added)). The present case does not involve joinder of a new defendant via an amended complaint filed after removal. Rather, this case involves a third-party complaint filed in response to a defendant's counterclaim, seeking indemnity for claims that did not exist at the time that the action was removed to this Court. Therefore, the Court finds that the *Hensgens* factors are inapposite, and there is no clear reason to deny Amason's impleader of non-diverse third-party defendants.

Even if the Court applied the *Hensgens* factors in this case, the same outcome would result. The Eleventh Circuit has noted—albeit in an unpublished and non-binding opinion—that "a district court has broad discretion in weighing [the *Hensgens*] factors to decide whether to permit or deny an amendment." *Dever v. Family Dollar Stores of Ga., LLC*, 755 F. App'x 866, 869 (11th Cir. 2018) (per curiam). Upon examination of each *Hensgens* factor, the Court finds in its discretion

that Amason's impleader of non-diverse third-party defendants was appropriate in this case.

The Court first considers whether Amason impleaded the non-diverse third-party defendants for the purpose of defeating this Court's jurisdiction over the action. *Hensgens*, 833 F.2d at 1182. Core does not dispute that Amason's third-party indemnity claims may have merit. Instead, Core asserts that Amason knew of its potential third-party indemnity claims at the commencement of this action yet chose to assert them only after removal. *See Smith v. White Consol. Indus., Inc.*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002) (non-binding case noting that such behavior "strongly indicates that the purpose of the plaintiff's amendment is to defeat federal jurisdiction").

At first glance, Amason's decision to bring its indemnity claims against non-diverse third-parties following removal of this action suggests that Amason primarily seeks to defeat this Court's jurisdiction. Amason, for its part, concedes that it knew of its subcontractors' identities and its potential indemnity claims against them prior to filing this action. Furthermore, Core identifies several previous proceedings in which it contends that Amason should have raised its claims against both Core and the non-diverse third parties but failed to do so. For example, Core notes that both it and Amason were sued by over 250 Hub tenants in Tuscaloosa Circuit Court, in

multiple lawsuits ("Tenant Suits") filed between December 2018 and August 2019. (Doc. 28 at 5.) Although Amason impleaded its subcontractors at that time and asserted that they were contractually obligated to defend and indemnify Amason against the tenants' claims, Amason did not bring a cross-claim against Core. (*See id.*)

Yet to question Amason's motives due to the timing of its third-party claims in this action is to ignore the derivative nature of such claims. *See* FED. R. CIV. P. 14(a)(1) (permitting a defending party to serve a third-party complaint only on a "nonparty who is or may be liable to it for all or part of the claim against it"). Amason's third-party complaint demands, among other relief, that the non-diverse subcontractors defend and indemnify Amason against any judgment or settlement costs resulting from Core's counterclaims against it. (Doc. 10 at 22.) Said counterclaims did not exist at the time that Amason initiated this action in state court or even at the time that Core removed the action to this Court. (*See* doc. 3.) And although Core has identified numerous prior proceedings in which Amason sued either Core or the non-diverse subcontractors in state or federal court, it has not identified a single prior proceeding in which *Core* asserted any claim against Amason. Thus, the occasion for Amason to assert its present indemnity claims against the

non-diverse subcontractors (i.e., in response to a claim brought by Core) never arose prior to Core removing the action to this Court.[5]

Having found that the first *Hensgens* factor favors Amason's impleader, the Court next turns to the second factor: whether Amason's impleader was dilatory. *See Hensgens*, 833 F.2d at 1182. Core argues that the impleader of non-diverse third parties was untimely because Amason has given no explanation as to why it did not bring its claims against them at the commencement of this action. (Doc. 28 at 7.) In response, Amason has explained that it did not intend for this action to extend beyond its own materialman's lien against Core and the other named defendants, but Core broadened the scope of the action when it asserted several counterclaims against Amason. (Doc. 32 at 6.) Upon review of the record, Court is satisfied with this explanation. Core filed its counterclaims on March 5, 2020. (Doc. 3.) Amason, in turn, filed its third-party complaint on March 26, 2020, a delay of only twenty-one days after the filing of the counterclaims from which Amason's indemnity claims derive. (Doc. 10.) For many of the same reasons that the Court finds Amason did not

---

[5] Amason's third-party complaint also asserts numerous non-derivative claims, such as breach of contract and negligence, against Amason's subcontractors. (Doc. 10.) Admittedly, these claims are unrelated to Core's counterclaims against Amason, and thus would more reasonably have been raised at the commencement of this action. Regardless, their presence in the third-party complaint does not affect this Court's conclusions as to Amason's purpose in bringing its indemnity claims only after Core asserted its own counterclaims. *See* FED. R. CIV. P. 18(a) (permitting a party asserting a third-party claim to join as many claims as it has against the opposing party).

seek only to defeat diversity jurisdiction, the Court also finds that Amason filed its third-party complaint in a timely manner.

Next, the Court considers potential prejudice that Amason would suffer if the Court rejected its attempt to litigate its third-party claims in this Court. Amason argues that dismissal of its third-party complaint would leave it with no forum in which it can assert its indemnification rights against its subcontractors with respect to Core's counterclaims against Amason. (Doc. 32 at 8–9.) However, it is not clear why Amason would not then be able to bring a separate indemnification action against its subcontractors in state court. Thus, Amason has not shown that it would be denied full relief for its claims if this Court dismissed the third-party complaint. Regardless, the Court notes that Amason would still incur additional costs if required to pursue its indemnity claims—which are intertwined with the counterclaims brought by Core in this action—in a parallel state proceeding. Therefore, this factor slightly favors permitting Amason's impleader.

Finally, no "factors bearing on the equities" are sufficient to warrant rejection of Amason's impleader. *Hensgens*, 833 F.2d at 1182. The Court recognizes the importance of providing out-of-state defendants such as Core a right to a federal forum. *See Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) ("The removal process was created by Congress to protect defendants."). However, the Court also

accords weight to the interrelated nature of Core's counterclaims and Amason's third-party indemnity claims. Unfairness would result if the Court barred one party from asserting derivative claims in this forum while permitting an opposing party from asserting its own related claims in the same forum. Moreover, to bar Amason's third-party claims here would add further complexity to an already convoluted web of legal actions crisscrossing between federal and state courts.

In sum, application of the *Hensgens* factors in this case leads the Court to conclude that Amason's impleader of numerous non-diverse third parties should be permitted pursuant to § 1447(e), and the action should be remanded back to state court.[6]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (doc. 8) is due to be terminated as moot, and its supplementary motion to remand (doc. 15) is due to be granted. An order consistent with this opinion will be entered contemporaneously herewith.

---

[6] Because the Court finds that Amason's impleader of non-diverse third parties is sufficient to warrant remand, the Court does not reach Amason's other grounds for remand.

**DONE** and **ORDERED** on July 14, 2020.

_____
L. Scott Coogler
United States District Judge

199455